Marion E. Marsh *vs.* Joseph Beraldi.
Benjamin Thomas *vs.* Same.
Judson J. Sartwell *vs.* Same.
Thomas Whelan *vs.* Same.

Middlesex.     January 21, 24, 1927.— June 14, 1927.

Present: Rugg, C.J., Braley, Crosby, Pierce, & Wait, JJ.

*Negligence,* Contributory, In use of motor vehicle. *Practice, Civil,* Exceptions: immaterial; Requests, rulings and instructions. *Agency,* Existence of relation, Independent contractor. *Evidence,* Presumptions and burden of proof, Relevancy and materiality, Competency, Of agency, Relating to insurance. *Witness.*

Upon exceptions saved at the trial together of four actions of tort by the driver of and occupants in a police ambulance for personal injuries suffered in a collision with a motor truck of the defendant, it was *held,* that there was nothing in the evidence which, as matter of law, required the judge to rule that the driver of the ambulance was negligent in respect to the speed at which he was driving, to the observation of traffic conditions about him, to the position he was holding in the road, to the ringing of his gong as a warning, to a turn to the right when he saw the oncoming truck suddenly and unexpectedly turn toward him in a swing to its left before reaching the middle point of an intersecting way, or to the application of his brake.

In the actions above described, the jury found for all the plaintiffs. *Held,* that, since the jury must have found that no negligence on the part of that plaintiff who drove the ambulance contributed to his injuries, the defendant could not have been harmed by a failure by the judge to

instruct the jury that the other plaintiffs could not recover if the driver's negligence contributed to their injuries.

Where, at a trial before a jury, a witness did not speak good English, it was for the jury to decide whether he comprehended questions asked of him, what his answers, often expressed in broken English, were to be taken to mean, and to what extent those answers expressed rather the suggestions of examining counsel than the knowledge or thought of the witness.

At the trial above described, it appeared that about six months before the accident the defendant had been the owner of the truck under a contract of conditional sale; there was evidence that, with the assent of his vendor, he then sold it to the person who was driving it at the time of the accident, in whose name it then became registered; that the purchase price was to be paid in instalments, title to remain in the defendant until it was fully paid; that the defendant was to furnish work to keep the truck busy; that the defendant and the purchaser had weekly accountings in which the defendant charged for gasoline, oil and repairs and the wages of a driver whom he engaged to operate the truck, and allowed the purchaser a regular price per day for the use of the truck, any balance on the accounting being retained by the defendant and applied on the purchase price; that, at the time of the sale, the purchaser was employed as a railroad brakeman and did nothing about the truck; that a few weeks before the accident the defendant, being dissatisfied with the driver he had employed, advised the purchaser to operate the truck himself, and thereupon the purchaser did so, after stipulating that he would have to receive more than the former driver; that both before and after the purchaser became the driver the defendant found employment for the truck and directed what should be done with it, and the purchaser as driver never did anything in the use of the truck unless advised and directed by the defendant. *Held*, that

(1) The question, whether the driver was an independent contractor or an employee of the defendant, was for the jury;

(2) Even if it were found that the driver was owner of the truck, the defendant would not necessarily be entitled to a verdict, since there was no rule of law which rendered it impossible for him as owner to be employed by the defendant to drive his own truck;

(3) The test of the relation between the defendant and the driver was the location of the power to control: if it rested in the employer, the employed was a servant; if it rested in the employed, he was an independent contractor;

(4) All the circumstances and agreements attending the sale or transfer of the truck were admissible to determine its character as affecting the rights of third parties, including a question asked by the plaintiff of the defendant, "After that paper was drawn and you say you had this verbal talk, not in writing, with . . . [the driver], you told him, didn't you, that that truck would have to be left in your possession until it was paid for?"

At the trial above described, certain evidence, admitted subject to exception by the defendant, which related to continuance by the defendant, after the sale of the truck, of insurance for his benefit against accident,

where it appeared that the judge carefully confined the evidence, both when it was received and in his charge, to the issue of control of the truck at the time of the accident, and where it appeared that the evidence bore upon that issue, was *held* not to have been prejudicial to the defendant.

FOUR ACTIONS OF TORT, by occupants of a motor police ambulance driven by the plaintiff in the third action, to recover for personal injuries suffered in a collision with a motor truck on November 5, 1923. Writ in the first action dated December 1, 1923, and in the other actions dated December 11, 1923.

In the Superior Court, the actions were tried together before *Keating,* J. Material evidence and rulings by the trial judge are stated in the opinion. The defendant moved that verdicts be entered in his favor and, those motions being denied, asked for the following rulings among others:

"11. There is no evidence in this case as to the directness of the route being employed by Toscano, in making the trip upon which he was bent at the time of the accident, or whether it was a road he would naturally take, or how he came to choose that road, or whether he was ordered to take that road. This being so, the evidence is left in the state where it is consistent with the theory that he was adopting his own course and going as he saw fit in the execution of the orders which had been given to him by the broken stone company.

"12. Nothing has been shown, in this case, as to the agreement between Toscano and Beraldi, which would prevent Toscano from doing any work which he saw fit with the truck. As a matter of law upon the agreement which they had made Toscano was free to use the truck in any employment which he saw fit to undertake.

"13. Nothing has been shown as to the agreement between Beraldi and Toscano which would prevent Toscano from doing work other than that which Beraldi provided for him on any day that Toscano saw fit to do such other work.

"14. The evidence as to the agreement between Toscano and Beraldi must be interpreted, as a matter of law, to mean that Beraldi was agreeing to furnish work for Toscano on

every day that he could; but there is nothing in the evidence to prove that Toscano agreed that he would do the work furnished him, or that he would work upon every day that Beraldi so furnished work."

The jury found for Marsh in the sum of $4,350, for Thomas in the sum of $4,810, for Sartwell in the sum of $1,125, and for Whelan in the sum of $415. The defendant alleged exceptions.

*D. H. Fulton*, for the defendant.

*E. W. Ogden & G. L. Ellsworth*, (*M. M. McChesney* with them,) for the plaintiffs.

WAIT, J. The plaintiffs were injured in a collision between a motor truck driven by one Toscano and a motor police ambulance, in which they were riding, driven by the plaintiff Sartwell. The four actions at law were tried together and are before us upon exceptions of the defendant. He admits that there was evidence which would justify finding that Toscano's negligence contributed to the accident. He contends that there was insufficient competent evidence to justify submission of the cases to the jury, and that he was prejudiced by the admission of incompetent evidence, by the refusal of certain requests for instructions, and by instructions given.

The essential questions of fact and of law in dispute are (1) whether Sartwell negligently contributed to the accident; (2) whether, if he did, the other plaintiffs were precluded thereby from recovery; and (3) whether the defendant was liable for negligence of Toscano.

(1) There was nothing in the evidence which, as matter of law, required the judge to rule that Sartwell was negligent in the speed at which he was driving, in the observation of traffic conditions about him, in the position he was holding in the road, in the ringing of his gong as a warning, in the turn to the right when he saw the oncoming truck suddenly and unexpectedly turn toward him in a swing to its left before reaching the middle point of an intersecting way, or in the application of his brake. There was evidence for the jury. The judge was right in refusing to take the cases from them on this ground. He read to the jury all but one of

the defendant's requests for instructions on this point, and covered fully in his charge the substance of the omitted request. No error appears in this regard.

(2) It is unnecessary to decide whether the jury should have been instructed that the other plaintiffs could not recover if Sartwell, the driver, contributed to the accident by his negligence. The jury found that Sartwell was not negligent and, thus, demonstrated that the defendant was not prejudiced by the conduct of the judge in this respect.

(3) The troublesome question is, whether the defendant could properly be found to be responsible for negligence of Toscano. The judge rightly instructed the jury that this depended upon whether Toscano or the defendant was in control of the truck: whether Toscano was an independent contractor, not subject to the direction and control of Beraldi in driving the truck, or was a servant or agent of Beraldi and, as such, subject to his control and direction. *Shepard* v. *Jacobs*, 204 Mass. 110.

Toscano and the defendant both were called by the plaintiffs as witnesses. The material facts on the issue of control came from them. Neither spoke good English. It was for the jury to decide whether they comprehended the questions; what their answers, often expressed in broken English, were to be taken to mean, and to what extent those answers expressed rather the suggestions of examining counsel than the knowledge or thought of the witness. The defendant rested at the end of the plaintiffs' case. Substantially all the facts in regard to control were in dispute, and there was occasion for further dispute as to the meaning of the testimony. The judge was right in denying the motions to direct verdicts for the defendants.

No one questioned that Beraldi had been owner of the truck under a conditional sale until May of 1923. He testified that, with the assent of his vendor, he sold it to Toscano about May 21, 1923. The registration was changed from his name as owner to that of Toscano as of May 22, 1923. The jury could have found that the terms of sale were $800 cash down, the balance of the purchase price of $5,500, with interest at seven per cent, to be paid $300 per

month "provided he works every day in the week," title
not to pass until the full price was paid; and that Beraldi
agreed, orally, to keep the truck in his back yard and to
furnish work to keep it busy. A chauffeur, Nolan, was
engaged by him to operate it. Every week Toscano and
Beraldi had an accounting, in which Beraldi charged for
gasoline, oil and repairs. He paid the chauffeur and allowed
a regular price per day for the truck. Any balance of its
earnings was retained by Beraldi on the purchase price.
Only one full payment of $300 for a month was made, but
Toscano testified that by the time of the accident he had
paid $2,400. Beraldi found occupation for the truck and
directed what should be done with it. Toscano remained in
his employment as a railroad brakeman until a few weeks
before the accident, which happened on November 5, 1923.
During this period he did nothing about the truck beyond
attending to the weekly accountings. Beraldi was dis-
satisfied with Nolan, and, a few weeks before the accident,
advised Toscano to run the truck himself. Toscano, who
had a family to support, said he must have $30 per week
instead of the $27 which Nolan was receiving. As he put
it, he said: "I will work for you, if you will give me $30 a
week." He learned to drive the truck from a chauffeur
furnished by Beraldi, and was driving it at the time of the
accident. In accounting he was allowed $18 a day for the
truck and was paid $30 per week. He went with the truck
wherever Beraldi directed; reported to Beraldi whenever
employment ceased on any job, and never, so far as appeared
in evidence, did anything in the use of the truck unless
advised or directed by Beraldi.

There is nothing here to require a finding that Toscano
was anything other than an employee of Beraldi hired to
drive a truck; and nothing to suggest it, unless it be that he
was owner of the truck. The jury were not bound to
believe him owner. The plaintiffs are not bound by Beraldi
and Toscano's evidence, although they introduced it.
*Hill* v. *West End Street Railway*, 158 Mass. 458. If we
assume his ownership, there is no rule of law which renders
impossible that an owner may be employed as a servant to

handle what he owns. The test of the relation is the location of the power of control. If it rests in the employer, the employed is a servant. If it rests in the employed, he is an independent contractor. *McAllister's Case*, 229 Mass. 193. In cases like *Pyyny* v. *Loose-Wiles Biscuit Co.* 253 Mass. 574, *Neelon* v. *Hirsh & Renner, Inc.* 255 Mass. 285, *Scribner's Case*, 231 Mass. 132, and *Centrello's Case*, 232 Mass. 456, but one conclusion could be drawn, and the court has determined the relationship. Here more than one conclusion is possible, and the question was for the jury. *Oulighan* v. *Butler*, 189 Mass. 287, 290, 291.

The judge was not bound to give the requests eleven, twelve, thirteen and fourteen. They were "based upon some particular view of a portion of the testimony." *Neelon* v. *Hirsh & Renner, Inc. supra*, at page 291, and cases cited. *Maidman* v. *Rose*, 253 Mass. 594, 596. They do not cover the full question of the distinction between servant and independent contractor, nor did any request presented by the defendant.

It remains to consider whether the defendant was prejudiced by the wrongful admission of evidence. In the direct examination of Beraldi, by counsel for the plaintiffs, he was asked in connection with his testimony in regard to the sale to Toscano: "After that paper was drawn and you say you had this verbal talk, not in writing, with Mr. Toscano, you told him, didn't you, that that truck would have to be left in your possession until it was paid for?" Subject to objection and exception, the witness was allowed to answer "Yes." In this there was no error. *Brown* v. *Spencer*, 163 Cal. 589, 595. The actual dealings of Beraldi and Toscano with the truck appeared fully in the evidence. Nor was the testimony inadmissible on the ground that it varied a written instrument. The paper was silent in regard to possession of the truck. It was a part only of the transaction. All the circumstances and agreements attending the sale or transfer were admissible to determine its character in affecting the rights of third parties. *Guaranty Security Corp.* v. *Eastern Steamship Co.* 241 Mass. 120, 123, and cases cited.

The more serious contention of the defendant is, that he was prejudiced by testimony in regard to insurance of the truck and his actions in respect thereto. Evidence was admitted that Beraldi took out accident insurance on the truck in December, 1922; that he dealt with one Shepardson in obtaining insurance, was handed a policy of the Lumbermens Mutual Casualty Company which bore Shepardson's name upon it, and made payment therefor to him; that Shepardson wrote out for him and Toscano the document in the nature of their contract of sale and purchase which appeared in evidence; that Beraldi did nothing to cancel the policy on selling to Toscano; that, on the night of the accident, he notified the office of the casualty company, and, the next day, talked with some one who came thence for information as to what had happened; that Toscano signed a report; that the company from its Chicago office under date of November 12, 1923, acknowledged "report of accident to employee of Joseph Beraldi," which occurred November 5, 1923; that the report apparently came from the Boston office; that counsel for plaintiff Marsh learned from Beraldi of the policy and what he had done in regard to it, including the receipt of a letter and check from the company, and advised Beraldi to insist upon defence by the company and to hold the check; that Beraldi, through an attorney, did insist upon defence and indemnity though notified by the company that it denied "liability in these cases." The policy was put in evidence and a letter from counsel for the company which showed that, while denying liability on the policy, it, nevertheless, was defending the action. Such evidence was competent. The fact that one insured himself against liability for damage caused by an elevator is admissible on the issue of control of the elevator. *Perkins* v. *Rice,* 187 Mass. 28, 30.

There is no sound distinction to render that decision inapplicable here. A jury might find from this evidence that Beraldi, at all times, regarded himself as owner of the truck for all purposes except registration, and Toscano as his servant. Such a finding is not necessary; a different conclusion might well be reached; but this does not render

the evidence incompetent. It cannot properly be held that it is of such slight probative value and so likely to lead the jury astray that it should be excluded on grounds of public policy in order to obtain a fair trial of the real issues in the case. The judge carefully confined it — both when it was received and in his charge — to the issue of control at the time of the accident. The fact that the policy, signed by the company, was delivered by Shepardson, taken with the testimony that negotiations for insurance were had with him and payment made to him, was evidence that Shepardson was an "agent" of the company sufficient to justify the judge in refusing to strike out Beraldi's reference to him as an agent. The word was used by him as a repetition or quotation of a word which he, himself, had spoken in conversation with one of counsel about Shepardson. It is not open to him to complain of his own answer.

We have considered all the exceptions and find no reversible error.

*Exceptions overruled.*